**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

YANDRI JOSELITO F. E.,

Petitioner,

v.

TODD BLANCHE, *Attorney General of the United States*; MARKWAYNE MULLIN, *Secretary of Department of Homeland Security*; DAVID VENTURELLA, *Acting Director of United States Immigration and Customs Enforcement*; DAVID EASTERWOOD, *Acting Director, St. Paul Field Office, U.S. Immigrations and Customs Enforcement*; RYAN SHEA, *Sheriff of Freeborn County*; and MIKE STASKO, *Jail Administrator of the Freeborn County Adult Detention Center*,

Respondents.

Case No. 26-cv-3835 (LMP/DTS)

**ORDER GRANTING HABEAS PETITION**

---

Matthew Beyer, **Husch Blackwell LLP, Minneapolis, MN**, for Petitioner.

Pedro del Valle, IV, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[1]

---

[1] When used in this Order, "Respondents" or "Government" refer to the federal officials and entities named as Respondents. Respondent Ryan Shea, the Freeborn County Sheriff, and Respondent Mike Stasko, Jail Administrator of the Freeborn County Adult Detention Center, have not participated in these proceedings.

Petitioner Yandri Joselito F. E.[2] brings a petition for a writ of habeas corpus, challenging the legality of his arrest and detention. For the following reasons, the petition is granted in part, and the Court orders the Government to release Yandri from custody.

**BACKGROUND**

Yandri is a native and citizen of Ecuador who entered the United States on November 25, 2023. ECF No. 1 ¶ 2. Upon entering the United States, Yandri was detained by immigration officers, placed into removal proceedings, and released on an order of recognizance ("OREC"). *Id.*; *see* ECF No. 1-2. Yandri has an application for asylum, withholding of removal, and protection under the Convention Against Torture pending before an immigration judge. ECF No. 1 ¶ 2. He has also applied for a T visa, which is available for survivors of human trafficking. *Id.* ¶ 20.

Eventually, Yandri moved to Minnesota, where he worked at a restaurant in Bloomington. *Id.* ¶ 22. Except for several traffic and driving infractions, Yandri has remained law-abiding. *Id.* ¶ 21; ECF No. 1-2. On August 2, 2026, Yandri was at work when a co-worker, whom Yandri alleges "had previously been argumentative and harassing" toward Yandri, attempted to fight Yandri. ECF No. 1 ¶ 22. During the scuffle, the co-worker cut Yandri's hand with a kitchen knife. *Id.* Yandri called the local police to report the incident, but upon responding to the scene, Bloomington police officers arrested Yandri on suspicion of second-degree assault with a dangerous weapon. *Id.* ¶¶ 23–24.

[2] The Court uses Petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initials of any nongovernmental parties in immigration cases. No disrespect is intended in doing so.

Yandri was never charged with a crime arising from this incident, and the Government does not dispute his account of what transpired. *Id.* ¶ 25.

Yandri was taken to the Bloomington Police Department's holding facility. *Id.* ¶ 26. Officials with Immigration and Customs Enforcement ("ICE") learned of Yandri's arrest, and on August 3, 2026, a Supervisory Detention and Deportation Officer with ICE issued an I-200 administrative warrant of arrest. ECF No. 6-4. A Deportation Officer with ICE also lodged a detainer for Yandri with the Bloomington Police Department on August 3, 2026. ECF No. 6-3. After the warrant and the detainer were issued, ICE officers arrested Yandri at the Bloomington holding facility on August 3, 2026. ECF No. 6 ¶ 8. Yandri remains detained at the Freeborn County Adult Detention Center in Albert Lea, Minnesota. ECF No. 1 ¶ 1.

Yandri filed this habeas petition on August 31, 2026, challenging the legality of his arrest and detention. ECF No. 1. As for his arrest, Yandri claims that the I-200 arrest warrant is invalid, and that his arrest did not otherwise comply with the statutory requirements for a warrantless arrest. *Id.* ¶¶ 101–11. Yandri also alleges that the Government failed to comply with several regulations governing the revocation of release on an OREC. *Id.* ¶¶ 112–22. As for his detention, Yandri asserts that his continued detention violates his substantive and procedural due process rights.[3] *Id.* ¶¶ 80–100. The

[3] Yandri also contests that he is subject to mandatory detention as a statutory matter. ECF No. 1 ¶¶ 123–27. Yandri recognizes, however, that the Eighth Circuit foreclosed this argument in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), so he includes that claim only for issue-preservation purposes. ECF No. 1 ¶ 124.

Court ordered the Government to respond to Yandri's petition no later than September 8, 2026, with any reply from Yandri due by September 15, 2026. ECF No. 4. The Government timely provided that briefing. ECF Nos. 5. Finding that Yandri's reply brief is unnecessary to the resolution of this case, and because there is no just reason for delay, the Court enters the following order before receiving Yandri's reply brief.

**ANALYSIS**

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

Yandri raises various constitutional, statutory, and regulatory claims, but the Court need only address one claim to resolve his petition. Yandri alleges that his arrest and detention violate 8 C.F.R. § 236.1(c)(9), which provides that when a noncitizen, "having been arrested and taken into custody" is released, that release may be revoked "in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge." ECF No. 1 ¶¶ 120–21.

This regulation gives the Government "immense discretion" to revoke a noncitizen's OREC and take the noncitizen into custody. *Sandhu v. Mullin*, No. 7:26CV5009, 2026 WL 1146643, at *4 (D. Neb. Apr. 28, 2026) (citation modified).

But that discretion is cabined by two conditions: (1) the discretion must be exercised to revoke the OREC; and (2) the discretion must be exercised by one of the officials listed in 8 C.F.R. § 236.1(c)(9). *See id.*; *see also Bryan A. Q. C. v. Lyons*, No. 26-cv-3165 (JRT/EMB), 2026 WL 1998719, at *2 (D. Minn. July 10, 2026).

Neither condition was satisfied here. As for whether Yandri's OREC was revoked, the OREC itself shows that it was not. The bottom of the OREC form is titled "Cancellation of Order." ECF No. 1-2 at 4. It provides space for the "Signature of Immigration Officer Canceling Order" and furnishes two options for the reason for revocation: "The [noncitizen] failed to comply with the conditions of release" or "The [noncitizen] was taken into custody for removal." ECF No. 1-2 at 4. This section of Yandri's OREC is blank, which suggests that "no officer, let alone a listed officer, revoked" Yandri's OREC. *Sandhu*, 2026 WL 1146643, at *4; *see also Ernest A. N. v. Blanche*, No. 26-cv-3470 (JRT/SGE), 2026 WL 2334034, at *2 (D. Minn. Aug. 12, 2026) (coming to a similar conclusion when the "Cancellation of Order" section of the petitioner's OREC was left blank); *Singh v. Noem*, 824 F. Supp. 3d 1197, 1212–13 (D.N.M. 2026) (same); *Ebu v. Tindall*, No. 25-cv-779, 2026 WL 252899, at *3 (W.D. Ky. Jan. 30, 2026) (same).

The Government suggests that it revoked Yandri's OREC under 8 C.F.R. § 236.1(c)(9) by issuing the I-200 arrest warrant. ECF No. 5 at 25. Courts have thrown cold water on the suggestion that an I-200 arrest warrant, standing alone, serves as a valid method of revocation under 8 C.F.R. § 236.1(c)(9). *See Kevin J. R. M. v. Blanche*, No. 26-cv-3122 (KMM/JFD), 2026 WL 2230647, at *5 (D. Minn. July 17, 2026), *report and recommendation adopted*, 2026 WL 2227793 (D. Minn. Aug. 3, 2026); *Ernest A. N.*,

2026 WL 2334034, at *2 n.2; *Ebu*, 2026 WL 252899, at *4; *Singh v. English*, No. 3:26-CV-113-CCB-SJF, 2026 WL 456716, at *3 (N.D. Ind. Feb. 18, 2026). The record in this case highlights why these decisions are persuasive. The revocation of an OREC requires the exercise of "discretion" by an immigration officer, and naturally, an officer cannot exercise discretion over a matter of which they are unaware. *See Sandhu*, 2026 WL 1146643, at *4 (explaining that the discretion in 8 C.F.R. § 236.1(c)(9) "must be exercised by *someone*" (emphasis in original)); *cf. Kickapoo Tribe of Indians of the Kickapoo Rsrv. in Kan. v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995) ("The exercise of discretion contemplates reasoned decision making on the basis of relevant and appropriate considerations to the task at hand."). None of the declarations or exhibits submitted by the Government acknowledge the existence of Yandri's OREC. It beggars belief that someone exercised "discretion" to revoke Yandri's OREC when the record reflects that no one involved in Yandri's arrest or detention even knew that the OREC existed. *See Kevin J. R. M.*, 2026 WL 2230647, at *5 (similarly holding when there was no evidence that the officer issuing the arrest warrant "was even aware of the [OREC], much less exercised discretion to revoke it").

Even if issuing an arrest warrant could constructively revoke an OREC, the Government still fails to demonstrate that the warrant was issued by someone authorized to revoke an OREC. Recall that the decision to revoke an OREC must be made by one of several officials: a "district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge." 8 C.F.R. § 236.1(c)(9). Here, the warrant was issued by

a Supervisory Detention and Deportation Officer. ECF No. 6-4. But "a Supervisory Detention and Deportation Officer, is not among the people given the authority to revoke" an OREC under 8 C.F.R. § 236.1(c)(9). *Mejia Diaz v. Noem*, No. 3:25-cv-960-CCB-SJF, 2025 WL 3640419, at *8 (N.D. Ind. Dec. 16, 2025). The Government responds that the authority to revoke an OREC has been delegated to Supervisory Detention and Deportation Officers pursuant to an ICE directive. ECF No. 5 at 25. Instead of providing the ICE directive itself, the Government cites to a docket entry from the U.S. District Court for the Western District of Washington, which ostensibly contains the ICE directive. *Id.* But that District's CM/ECF system states that this Court does not have permission to view that docket entry. And through its own research, the Court has not been able to definitively locate the directive the Government's briefing describes.[4] Absent any record evidence supporting the Government's assertion, the Court is left with the plain text of 8 C.F.R. § 236.1(c)(9), which does not list "Supervisory Detention and Deportation Officers" as an official authorized to revoke an OREC. On this record, then, the OREC was not revoked and remains valid.

---

[4] Courts have examined a similar argument after being provided with an ICE directive that purportedly delegated authority to Supervisory Detention and Deportation Officers to make certain detention decisions under 8 C.F.R. § 236.1(c)(9). Those courts have found that argument lacking. *See Ceesay v. Kursdorfer*, 781 F. Supp. 3d 137, 161 (W.D.N.Y. 2025) ("On its face, the delegation order submitted by the government refers only to a limited set of powers . . . that do not include the power to revoke release."); *Ebu*, 2026 WL 252899, at *4 ("[T]he delegation order does not include the delegation of the authority for the revocation of release.").

Having found that the Government violated 8 C.F.R. § 236.1(c)(9) in detaining Yandri, the next question is one of remedy. The Government says that habeas relief is not appropriate for a violation of a regulation. ECF No. 5 at 23–25. But Yandri's regulatory claim is rooted in the *Accardi* doctrine, which itself derives from a habeas case. ECF No. 1 ¶ 119; *see United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (reversing dismissal of habeas petition in which the petitioner alleged that the Board of Immigration Appeals had failed to follow its own regulations). More to the point, habeas is "at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). It goes without saying that federal regulations like 8 C.F.R. § 236.1(c)(9) are the law, *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (citation modified), so Yandri's arrest and detention in violation of federal regulations can fairly be described as "unlawful executive detention." And the remedy for unlawful detention "is, of course, release." *Munaf*, 553 U.S. at 693; *see Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025) (explaining that a federal court's habeas authority "includes the release of detained noncitizens when ICE fails to follow its own regulations"). These well-established principles compel Yandri's release.

**CONCLUSION**

For these reasons, and based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Yandri Joselito F. E.'s Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED** as follows:

1. The Government is **ORDERED** to release Yandri Joselita F. E. from custody on his preexisting OREC by no later than 5:00 p.m. on Monday, September 14, 2026; and

2. The Government is **ORDERED** to file a status report certifying its compliance with this Order by no later than Tuesday, September 15, 2026.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 11, 2026

*s/Laura M. Provinzino*
Laura M. Provinzino
United States District Judge